# EXHIBIT 1

FILED
James W. Giacomino
CLERK, SUPERIOR COURT
10/30/2025 10:49:42 AM
BY: ALAN WALKER /s/
DEPUTY
Case No. C20257621
HON. CYNTHIA T. KUHN

Joseph M. Zebas (AZ Bar #: 018953)
Austin Wade (AZ Bar #: 038159)
ZEBAS LAW FIRM, L.L.C.
3324 N Grimes St./P.O. Box 1675
Hobbs, NM 88241-01675
Telephone: (575) 393-1024
Fax: (575) 393-1234
joe.zebas@zebaslaw.com
*Attorneys for Plaintiff*

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF PIMA**

| | |
|---|---|
| **Tristan Moonsammy,**<br><br>       **Plaintiff,**<br><br>vs.<br><br>**My Wireless National, LLC dba AT&T;**<br>**John And Jane Doe I-V; And Black And**<br>**White Corporations I-V,**<br><br>       **Defendants.** | Case No.<br><br>**COMPLAINT FOR DAMAGES** |

Plaintiff, Tristan Moonsammy, hereby submits the following Complaint for Damages in the above-entitled matter, and his claim against Defendant, alleges as follows:

**INTRODUCTION**

1. Plaintiff files the above-captioned Complaint against Defendant My Wireless National, LLC dba AT&T (hereinafter "Defendant My Wireless" or "Defendant") for employment discrimination based on race in violation of the Arizona Civil Rights Act (ACRA), Ariz. Rev. Stat. §§ 41-1461 to 41-1465.

2. While employed for Defendant My Wireless as a wireless retail sales associate, Plaintiff Tristan Moonsammy was submitted to a hostile environment, was racially discriminated

against, and retaliated against by at least one of his superiors of Defendant My Wireless. Plaintiff repeatedly complained to Defendant My Wireless, but to no avail.

3. The events that will be referenced in this complaint are the result of Defendant My Wireless lack of compliance with labor law which requires that employers actively implement work environments free of retaliation and discrimination.

4. Plaintiff seeks all available remedies under ACRA, including but not limited to backpay, equitable relief, and compensatory damages, as provided under A.R.S. § 41-1472.

## JURISDICTIONAL ALLEGATIONS

5. This Court has jurisdiction over this matter pursuant to A.R.S. § 41-1481, which provides for a private right of action under the ACRA.

6. The events giving rise to this complaint occurred at the Defendant's facilities in Pima County, Arizona.

7. Venue is proper in Pima County, Arizona, because the alleged discriminatory acts occurred in this county, and Defendant conducts business in this county.

8. Plaintiff has exhausted his administrative remedies as to his claims under ACRA, having filed a charge with the Division of Civil Rights Section (hereinafter "Division").

9. Plaintiff was issued a Notice of Right to Sue letter by the Division on or about February 5, 2025, a copy of which is attached here too and made part of this Complaint. (See, Exhibit A.)

## PARTIES

10. Plaintiff Tristan Moonsammy (hereinafter "Plaintiff") was, at all times relevant to this cause of action, a resident of Tucson, Pima County, State of Arizona.

11. Defendant My Wireless National, LLC dba AT&T, (hereinafter "Defendant My

2

Wireless" or "Defendant"), is, and at all times relevant to this cause of action, a California corporation registered in the state of Arizona, the employer of Plaintiff.

12. Upon information and belief at all times pertinent and mentioned herein Defendant(s) JOHN DOE and JANE DOE I-V, and BLACK and WHITE CORPORATIONS I-V being fictitious name(s) representing the entity / entities and/or individual(s) which / who had employment, agency, supervisory, managerial, contractual and / or other interest(s) in and over Plaintiff at all times relevant to this cause of action.

## JURY DEMAND

13. Plaintiff demands a jury trial as to all triable issues.

## RULE 26.2 TIER DESIGNATION

14. Pursuant to Rule 26.2 of the Arizona Rules of Civil Procedure, Plaintiff designates this case for Tier II Discovery.

## GENERAL ALLEGATIONS

15. Plaintiff incorporates all foregoing paragraphs as if fully set forth herein.

16. On or about April 30, 2024, Plaintiff began working for Defendant My Wireless as a Wireless Retail Sales Associate at the 4545 N. Oracle Road location ("4545 location"), and was transferred to the 7619 N. Oracle Road location ("7619 location").

17. Throughout the entirety of Plaintiff's employment, Plaintiff was floated between the 4545 location and the 7619 location, which were managed by store managers Hunter Cooper, and Nicholas.

18. Plaintiff was the only Black employee at the 4545 location and the 7619 location.

19. Plaintiff was informed by his superiors, Hunter Cooper, and Nicholas, that the employees were allowed to connect their personal cellphones to the store speaker as

3

long as they played "non-explicit" music when customers were present in the store.

20. Plaintiff frequently observed non-Black colleagues, including the assistant manager, playing explicit rap, hip-hop, and R&B music when the store was empty, with no issues or repercussions.

21. When the stores were empty, Plaintiff would also play music in the rap, hip-hop, and R&B music genres.

22. On or about June 8, 2024, Plaintiff received a message from store manager Nicholas, stating that going forward music could only be played from the store phone, his cellphone, or the assistant manager's phone at the 7619 location.

23. On or about June 9, 2024, Plaintiff presented to the 4545 location for his scheduled shift to find that the store speaker had been removed to prevent Plaintiff from playing rap music when the store was empty, despite the assistant manager and other colleagues previously playing rap music.

24. On or about June 11, 2024, Plaintiff complained to Defendant's Human Resources (HR) department regarded the change in music policies targeted at Plaintiff.

25. Defendant took no action to address Plaintiff's complaint and concern for the disparate treatment of him by the store managers Nicholas and Hunter Cooper.

26. On or about July 10, 2024, while Plaintiff was working at the 4545 location, Plaintiff was sent home early by store manager Hunter Cooper for pointing out that Mr. Cooper insisted that a black customer be charged the restocking fee, even though the customer was within the allowed exchange/return period, and was polite and respectful—meeting the criteria for waiving the restocking fee.

27. Shortly after being sent home early, Plaintiff received a call from Defendant's HR

4

department asking if Plaintiff still felt comfortable working at the 4545 location, to which Plaintiff responded that he was.

28. At Plaintiff's next shift, at the 7619 location, store manager Nicholas told Plaintiff that store manager Hunter did not want Plaintiff working at his store (4545 location) anymore.

29. After this discussion, Plaintiff's hours were cut in half. Despite Plaintiff being hired as a full-time employee, he was only scheduled for half his usual scheduled hours, making him a part-time employee.

30. Defendant indicated that this cut in Plaintiff's hours was due to there not being enough business to schedule him as a full-time employee, despite there being two full-time employees scheduled at the 7619 location and Plaintiff being a top-performing sales associate.

31. Defendant had an approved practice of allowing employees to use their personal electronics when business was substantially slow.

32. On or about July 21, 2024, Plaintiff was publicly reprimanded by store manager Hunter Cooper for using his iPad on the sales floor when the store was extremely slow.

33. Shortly after Plaintiff was reprimanded, Plaintiff worked with the non-Black assistant manager of the 7619 location, who spent his shift watching video game livestreams on his personal laptop regardless of the volume of business on the sales floor, but was never reprimanded.

34. Due to racial discrimination and targeting, selective enforcement of policies and procedures against Plaintiff, the only Black employee, and the lack of any action taken by Defendant in response to Plaintiff's complaints of discrimination to HR, Plaintiff

5

was forced to resign from his position of employment with Defendant on or about July 28, 2024.

## COUNT I

## DISCRIMINATION UNDER THE ACRA AS TO DEFENDANT MY WIRELESS

35. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

36. The discrimination of Plaintiff, by Defendant My Wireless, as set forth above, is in violation of the ACRA.

37. The Arizona Civil Rights Act (ACRA), A.R.S. 41-1461 to 41-1465, prohibits employers from discriminating against employees on the basis of race.

38. Plaintiff was the only Black employee at both the 4545 and 7619 Oracle Road locations managed by Defendant My Wireless.

39. Plaintiff was subjected to disparate treatment based on his race, including but not limited to the following:

   a. Non-Black employees were allowed to play explicit music without consequences, while Plaintiff was subjected to targeted restrictions on his music choices, including the removal of the store speaker to prevent him from playing rap music.

   b. Plaintiff was publicly reprimanded for using his iPad during slow business periods, while a non-Black assistant manager was allowed to use a laptop for personal activities without reprimand.

   c. Plaintiff was sent home early after pointing out racial bias in the treatment of a

6

Black customer.

40. Defendant's actions, as described above, constitute unlawful racial discrimination in violation of the ACRA.

41. As a direct and proximate result of Defendant's discriminatory conduct, Plaintiff has suffered economic damages, emotional distress, and other harm.

## COUNT II

### HOSTILE WORK ENVIRONMENT AND RACIAL DISCRIMINATION AS TO DEFENDANT MY WIRELESS

42. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

43. The ACRA prohibits employers from creating or permitting a hostile work environment based on an employee's race.

44. Plaintiff was subjected to a hostile work environment due to the following:

   a. Targeted restrictions on his music choices, including the removal of the store speaker, while non-Black employees were allowed to play similar music without consequences.

   b. Public reprimands for conduct that was permitted for non-Black employees, such as using personal electronics during slow business periods.

   c. Retaliatory actions, including being sent home early and having his hours cut in half, after raising concerns about racial discrimination.

45. The cumulative effect of Defendants actions created a workplace environment that was hostile, offensive, and discriminatory toward Plaintiff as the sole Black employee.

46. Defendant's failure to address Plaintiff's complaints of discrimination and its continued

7

discriminatory conduct altered the terms and conditions of Plaintiff's employment.

47. As a direct and proximate result of Defendant's creation of a hostile work environment, Plaintiff has suffered economic damages, emotional distress, and other harm.

## COUNT III

## RETALIATION UNDER THE ARIZONA CIVIL RIGHTS ACT

48. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

49. The ACRA prohibits employers from retaliating against employees who oppose unlawful employment practices or file complaints regarding discrimination.

50. Plaintiff engaged in protected activity by filing a complaint with Defendant's Human Resources department on June 11, 2024, regarding the discriminatory change in music policies that targeted him.

51. Following Plaintiff's complaint, Defendant engaged in retaliatory conduct, including but not limited to:

   a. Sending Plaintiff home early after he pointed out racial bias in the treatment of a Black customer.

   b. Cutting Plaintiff's hours in half, effectively reducing him from full-time to part-time status, despite his status as a top-performing sales associate.

   c. Banning Plaintiff from working at the 4545 location.

52. The temporal proximity between Plaintiff's HR complaint and the adverse actions taken against him establishes a causal connection and supports an inference of retaliatory motive.

53. Defendant's retaliatory actions were intended to discourage Plaintiff from opposing

8

discriminatory practices and constituted unlawful retaliation under the ACRA.

54. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered economic damages, emotional distress, and other harm.

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendant's as follows:

A. For Plaintiff's special damages, and other economic losses, in an amount to be proven at trial;

B. For Plaintiff's general damages, including but not limited to pain and suffering, loss of enjoyment of life, and other emotional trauma, in an amount to be proven at trial;

C. For punitive damages;

D. For Plaintiff's costs incurred in pursuing these claims pursuant to A.R.S. § 12-341;

E. For pre- and post-judgment interest to the extent permitted by law; and

F. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: October 30, 2025.

          **ZEBAS LAW FIRM, LLC**

        By:  _/s/Joseph Zebas_
         Joseph M. Zebas
         Austin Wade
         502 W. Alto Dr.
         Hobbs, NM 88240
         575-393-1024 Office
         575-393-1024 Facsimile
         joe.zebas@zebaslaw.com
         *Attorneys for Plaintiff*

ORIGINAL of the foregoing filed
this 30th day of October 2025, with:

9

1 | Clerk of the Court
2 | PIMA COUNTY SUPERIOR COURT
110 West Congress St.
Tucson, AZ 85701

3 | By: /s/ *Joseph Zebas*
4 |         Joseph Zebas